**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------------X
POWER UP LENDING GROUP, LTD.,

                    Plaintiff,

           -against-

NUGENE INTERNATIONAL, INC. and
ROBERT B. WHEAT,

                    Defendants.
----------------------------------------------------------------X

                          **REPORT AND**
                        **RECOMMENDATION**

                    CV 17-6601 (SJF) (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

### I.     PRELIMINARY STATEMENT

    Plaintiff Power Up Lending Group, Ltd. ("Plaintiff") commenced the instant action in November 2017, alleging that Defendant Nugene International, Inc. ("Nugene") violated the Securities and Exchange Act and breached certain purchase agreements connected with Plaintiff's investment of $172,00 in Nugene. *See generally* Plaintiff's Complaint ("Compl.") [DE 1]. In addition to claims against Nugene, Plaintiff's Complaint asserts a cause of action against Individual Defendant Robert Wheat ("Wheat") for intentional interference with contract. *See id.* ¶¶ 45-59. Plaintiff claims that Wheat – whose relationship with Nugene is in dispute and is central to the issue pending before the Court – caused Nugene to violate both its financial reporting requirements and provisions of its agreements with Plaintiff, resulting in Plaintiff's loss and Wheat's benefit. *See id.*

    On June 19, 2018, Wheat moved to dismiss the claim against him for lack of personal jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(2), and for improper venue, pursuant to Rule 12(b)(3). *See generally* Individual Defendant Wheat's Motion to Dismiss

("Ind. Def.'s Mot.") [DE 30]; Individual Defendant Wheat's Memorandum of Law ("Ind. Def.'s Mem.") [DE 30-3]; Individual Defendant Wheat's Reply ("Ind. Def.'s Reply") [DE 32].  In the alternative, Wheat seeks an Order transferring this action to the United States District Court for the Southern District of California.  *See generally* Ind. Def.'s Mem.  Plaintiff opposes the motion on various grounds.  *See* Plaintiff's Memorandum in Opposition ("Pl.'s Opp'n.") [DE 31].  On July 26, 2018, Judge Feuerstein referred Wheat's motion to dismiss to this Court for a Report and Recommendation as to whether the motion should be granted.  For the reasons set forth below, the Court respectfully recommends to Judge Feurestein that Wheat's motion to dismiss the Complaint or, alternatively, to transfer this action to the Southern District of California, be DENIED.

## II.    BACKGROUND

### A.    Plaintiff's Complaint

Plaintiff is a corporation organized and existing under the laws of the State of Virginia[1] and maintains a business office in Nassau County, New York.  Compl. ¶ 7.  Nugene is a corporation organized and existing under the laws of the State of Nevada, with a business office in Irvine, California.  *Id*. ¶ 8.  Wheat has been and is a "resident of La Jolla, California, and is a citizen of the State of California."  *Id*.  Plaintiff's business involves investing in publicly traded "nano-cap" companies, like Nugene, whose securities are traded on the over-the-counter market. *Id*. ¶ 2.  Nano-cap companies like Nugene are often capital constrained as their low market capitalization hinders their access to banks or investment firms.  *Id*.  Plaintiff provides capital to

---

[1]    Although the Complaint refers to the "State of Virginia," Virginia is one of four States in the Union which designates itself as a "Commonwealth."

such companies "as an investment in return for shares purchased at a discount to market price." *Id*.

Nugene, as a borrower, made, executed, and delivered to Plaintiff a Convertible Promissory Note dated January 19, 2017 in the amount of $114,000, and a second Note dated February 27, 2017 in the amount of $58,000 ("the Notes"). *Id*. ¶ 12. The Notes were issued pursuant to Securities Purchase Agreements ("the Agreements") which provide for certain issuance of and conversion rights in and to the stock of Nugene. *Id*. The Notes and Agreements (collectively, "the Instruments") "provid[ ] that the venue for any action for lawsuit between the parties would be in the State of New York, County of Nassau and that the instruments would be governed by and construed in accordance with the laws of the State of Virginia." *Id*. ¶ 13. Additionally, the Instruments provide that Nugene must remain current in its filing obligations under the Exchange Act of 1933, and that it must maintain sufficient reserves of stock with its transfer agent to permit conversion requests from the Plaintiff to be processed in a timely manner. *Id*. ¶ 14.

### 1. *Allegations as to Nugene*

The Complaint alleges that Nugene failed to file its Form 10Q Quarterly Report with the Securities and Exchange Commission ("SEC") covering the quarter ending March 31, 2017, which was due to be filed by June 30, 2017. Compl. ¶ 15. Similarly, Nugene failed to file its Form 10Q covering the quarter ending June 30, 2017, which was due to be filed by September 30, 2017. *Id*. The terms of the Instruments provide that failure to file Nugene's required SEC filings constitutes an event of default and breach. In such circumstances, under Section 3.9 of the Notes, Plaintiff is entitled to recover 150% of the outstanding principal amount of the Notes, together with accrued and unpaid interest and default interest. *Id*. ¶¶ 14, 16.

Plaintiff also alleges that on or about September 27, 2017, in response to a conversion request, it was advised by the transfer agent that Nugene had not maintained sufficient authorized and reserved shares, and the conversion request could not be honored. *Id.* ¶ 15. According to Plaintiff, this constituted a second default and a "separate, distinct and material breach of the Notes and Agreements." *Id.*

On October 3, 2017, Plaintiff authorized its attorney to prepare and forward a letter notifying Nugene of its default under the Notes. Compl. ¶ 17. In total, Plaintiff claims it has been damaged in an amount not less than $276,055, together with interest and default interest. *Id.* ¶ 18.

Based on the above allegations, Plaintiff's Complaint asserts the following causes of action as against Nugene: (1) "Promissory Notes Defaults," (2) "Breach of Contract – Lost Profits;" (3) "Breach of Contract – Litigation Expenses;" (4) "Violations of Section 10(b) of the Exchange Act and Rule 10(b)-5b;" and (5) "Injunctive and Equitable Relief." Compl. ¶¶ 11-44. As to its fifth cause of action, Plaintiff asserts that Nugene "is clearly incapable of satisfying any [ ] money judgment obtained," *id.* ¶ 33, and as a result, "the only viable avenue available to the Plaintiff to obtain repayment of the Note is by exercising its conversion rights and thereby obtaining unrestricted shares in [Nugene] and selling those shares on the open market." *Id.* ¶ 36.

### 2.   *Allegations as to Wheat*

Plaintiff's Complaint also asserts a sixth cause of action, which is raised against Individual Defendant Wheat alone for "Intentional Interference with Contract." Compl. ¶¶ 45-59. According to Plaintiff, Wheat was "aware of the nature, terms and existence of the contracts and agreements between the Plaintiff and [Nugene] and was fully familiar with the terms and conditions of the Note and Agreement." *Id.* ¶ 46. Despite this knowledge, "Wheat . . .

4

prevent[ed] [Nugene] from performing its federal filing, thus causing [Nugene] to breach the Note and Agreement without any legal or factual justification." *Id*. ¶ 51.  Plaintiff contends that "Wheat caused the Note and Agreement to be breached in this manner not for the benefit of [Nugene] but rather for his own benefit and that of his family members so that the stock price could be maintained as high as possible and they would benefit financially from such enhanced price." *Id*. ¶ 52.  Similarly, Plaintiff alleges that Wheat further attempted to prevent it from converting the debt owed by Nugene into common stock by changing the transfer agent "so that the substitute transfer agent would not be bound by that certain irrevocable transfer agent letter signed by the Defendant's original transfer agent." *Id*. ¶ 53.  Wheat also allegedly caused Nugene to default under the Notes and breach the Agreements "by causing [Nugene] to obtain funding through other Convertible Promissory Notes and Securities Purchase Agreements received by other third parties, in direct violation of the note and agreement." *Id*. ¶ 54.

As to the basis for this Court's jurisdiction over Wheat – the issue central to the instant motion – the Complaint states that Wheat "directly or indirectly used the means and instrumentalities of interstate commerce, including but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets" in connection with the above acts.  Compl. ¶ 6.  "In particular, Wheat made frequent use of interstate communications, including telephone, text messages, and e-mails to conduct the negotiations, make representations and engage in business practices within the State of New York thus subjecting himself to long arm jurisdiction within the state." *Id*.  The Complaint also alleges that "Wheat was designated as being in effective control of [Nugene] and assume [*sic*] the position of de facto President and CEO of [Nugene] in the place and stead of the officers who had signed the

instruments between the parties, including those covenants conferring jurisdiction and venue within [the Eastern District of New York]." *Id.*

### B.    Procedural Background

Plaintiff filed the Complaint in this action on November 13, 2017. *See* DE 1. On January 19, 2018, a Certificate of Default was issued by the Clerk of the Court as to Nugene. *See* DE 11. In early March 2018, Wheat and Plaintiff filed requests for and opposition to a pre-motion conference before Judge Wexler for purposes of moving to dismiss the Complaint for lack of personal jurisdiction. *See* DE 14, 15. While Wheat's request for a pre-motion conference was pending, Plaintiff and Wheat appeared before this Court for a Discovery Status Conference on March 22, 2018, and a discovery schedule was set. *See* DE 18. On May 4, 2018, this matter was reassigned to District Judge Sandra Feuerstein, and, several days later, the parties stipulated to a briefing schedule for Wheat's motion to dismiss. *See* DE 20. Judge Feuerstein saw the parties for a conference on June 4, 2018, at which time she stayed discovery pending resolution of the anticipated motion to dismiss. *See* DE 27. Wheat's motion to dismiss was filed fully briefed on June 19, 2018, *see* DE 30-32, and was referred to this Court for a Report and Recommendation on July 26, 2018. *See* Electronic Order dated July 26, 2018.

### C.    The Parties' Positions

#### 1.    *Wheat's Arguments*

##### a.    Lack of Personal Jurisdiction

Wheat argues that he "is not and has never been an officer, director, employee or shareholder of Nugene," "had no role in drafting, negotiating or executing the agreements between Nugene and Power Up," and "merely provided limited consulting services to Nugene as it considered a potential deal with Power Up." Ind. Def.'s Mem. at 1. As a result, Wheat's

primary challenge to personal jurisdiction is that he has "never seen" the forum selection clause pointed to by Plaintiff, and therefore cannot properly be considered subject to it for purposes of personal jurisdiction. *See id.* Wheat also argues that "the Complaint's vague and conclusory reference to interstate communications fails to establish personal jurisdiction over Wheat in this Court." *Id.* at 2.

In support of his motion, Wheat submits a personal declaration in which he asserts his lack of connection to New York State, including the fact that he is a resident of San Diego County, California, has never been a resident of New York State, does not own any real properly in New York State, does not derive any income from New York State, and has never had a bank account in New York State. *See generally* Declaration of Robert B. Wheat in Support of his Motion to Dismiss ("Wheat Decl.") [DE 30-1]. As to his role with respect to Nugene, Wheat states that he has never been a "de facto" President and/or CEO of Nugene, has never had any authority to act on behalf of Nugene or bind Nugene, and was not a signatory to, and has not seen, the agreements at the center of this case. *See id.* ¶¶ 3, 18, 19, 21; Ind. Def.'s Mem. at 4. Rather, Wheat argues his "limited role is that Nugene used [his] services as a consultant to discuss and review the interest rate and the conversion terms of a potential deal between Plaintiff and Nugene and then provide recommendations to Nugene. In that limited capacity . . . Wheat had several conversations with Mr. Curt Kramer of Plaintiff about the terms of interest and conversion between Plaintiff and Nugene." Ind. Def.'s Mem. at 5; Wheat Decl. ¶ 20. Subsequently, "Wheat passed on the potential terms to Nugene's counsel, Keith A. Rosenbaum, Esq., who is also located in California, along with his recommendations. Wheat had no further involvement." Ind. Def.'s Mem. at 5; Wheat Decl. ¶ 21 (internal citation omitted).

Wheat also submits with his motion the declaration of Keith Rosenbaum ("Rosenbaum"), who previously served as outside legal counsel for Nugene.  Rosenbaum states that Wheat has never been an officer, director, employee, or shareholder of Nugene, and that Wheat's family and any entities associated with Wheat never owned more than approximately 1% of Nugene's outstanding shares at any given time.[2]  *See generally* Declaration of Keith Rosenbaum in Support of Wheat's Motion to Dismiss ("Rosenbaum Decl.") [DE 30-2].

In addition to his argument that he has no connection to and cannot be bound by the forum selection clause of the Instruments, Wheat points out that neither the Notes nor Agreements are quoted verbatim in the Complaint, nor are any of them attached to the Complaint.  Ind. Def.'s Mem. at 10.  Wheat argues that the language in the Complaint concerning the forum selection clause is not mandatory since the Complaint alleges only that "'venue for any action or lawsuit between the parties would be in the State of New York,' and not 'shall be.'"  *Id.* (quoting Compl. ¶ 13).

Wheat also challenges jurisdiction under both N.Y. C.P.L.R. §§ 301 and 302.  According to Wheat, basic due process requirements prevent this Court from exercising personal jurisdiction under § 301 because the Complaint does not allege that Wheat is domiciled or is "at home" in New York State.  Ind. Def.'s Mem. at 15.  Similarly, Wheat argues that this Court cannot exercise personal jurisdiction over him under § 302(a) – New York's long-arm jurisdiction statute – "because the Complaint fails to allege that (i) Wheat transacted business within New York, and (ii) that the claim asserted arose from that business activity."  *Id.*

---

[2]   In attempting to explain his statements via text message regarding his own interest in Nugene, Wheat states, in a footnote, that he "has never been a shareholder or debtholder of Nugene.  RBW, Inc. was the debtholder and Wheat is an officer of RBW, Inc."  Ind. Def.'s Reply at 2 n.2.

According to Wheat, his physical absence from the State and the fact that he does not own real property in the State preclude jurisdiction under the remaining subsections of N.Y. C.P.L.R. § 302(a). *See id.*

Lastly, Wheat argues that the exercise of personal jurisdiction over him would not comport with constitutional principles of due process. He contends that he does not have "minimum contacts" with New York State and that the assertion of jurisdiction would not comport with "traditional notions of fair play and substantial justice." Ind. Def.'s Mem. at 17.

### b.      Venue is Not Proper

Wheat also argues that venue is not proper in the Eastern District of New York. Referring to the language of 28 U.S.C. § 1391(b), he asserts that none of the prerequisites for venue have been met:  residency of a defendant, location of acts or omissions underlying the suit, or a district in which a defendant is subject to the court's personal jurisdiction. Ind. Def.'s Mem. at 17-18.

### c.      Transfer Under 28 U.S.C. § 1404(a)

In the absence of dismissal, Wheat argues that this action should be transferred to the U.S. District Court for the Southern District of California. In support of his argument, he relies on the uncontested fact that Wheat and Nugene are both located in California, as well as the fact that "[t]he witnesses or documents concerning the limited consulting relationship between Nugene and Wheat would be located in California. Likewise, most of the witnesses and documents concerning the relationship between Plaintiff are likely to be located in California." Ind. Def.'s Mem. at 19-20.

### 2. *Plaintiff's Arguments in Opposition*

Plaintiff opposes Wheat's motion on the grounds that evidence submitted with its motion papers contradicts Wheat's assertion that his involvement with Nugene was limited. To the contrary, Plaintiff argues that its evidence supports that Wheat was "in effective control of and the largest investor in Nugene, [and] has a sufficiently close relationship therewith that enforcement of the [forum selection] clause against him is foreseeable notwithstanding that he is not a signatory to the agreements at issue." Pl.'s Opp'n. at 5.

In support of its opposition, Plaintiff attaches the two Notes and Agreements at issue in this case, *see* DE 31-2, along with the affidavit of Curt Kramer ("Kramer"), President of Plaintiff Power Up Lending Group. In his affidavit, Kramer states that "Mr. Rosenbaum advised me that Mr. Wheat was the largest shareholder and debt holder in Nugene[,] that he was in effective control of its operation, and that any decisions would have to be made by Mr. Wheat." Affidavit of Curt Kramer in Opposition to Wheat's Motion ("Kramer Aff.") [DE 31-4], ¶ 4. Kramer goes on to state that "[i]n June 2017 Mr. Wheat advised me by telephone that he owned many shares in Nugene for himself and members of his family, and that he was not going to allow Power Up to convert itse debt into stock because he wanted to keep the stock price high and obtain the stock for himself and his family members." *Id.* ¶ 5. Kramer affirms that he has "reviewed the affidavit of Mr. Wheat dated May 23, 2018, and virtually all of his allegations are false," and that Wheat's affidavit is "contradicted by thirteen pages of text messages that I exchanged with [Wheat] covering the period of June 14, 2017 to December 21, 2017." *Id.* ¶ 6. Attached as an exhibit to Kramer's affidavit are multiple pages of text messages which Kramer states he exchanged with Wheat. *See id.*, Ex. A [DE 31-5].

10

As to the purported text messages[3] between Wheat and Kramer – the genuineness of which Wheat does not appear to contest, *see* Ind. Def.'s Reply at 9-10 – there are several messages which Kramer highlights as supporting Wheat's nexus to Nugene and the Instruments:

- On June 29, 2017, Wheat advised Kramer as follows: "I believe I have a plan that will preserve all of your principal." Kramer Aff., Ex. A at 4.

- On July 26, 2017, in response to a message from Kramer stating "[t]his is a disaster with basically no alternative but to commence action. This was a purposeful destruction of the company and its shareholders. I've been an ally but this seems like a willful purposeful fraud scheme," Wheat texted the following: "Lets [*sic*] discuss in person, I am the largest debt holder and have over 5 times your investment at a minimum so if [you] are suing the company I would consider joining." *Id*. at 5.

- On October 4, 2017, Wheat advised Kramer as follows: "I am working on the licensing agreements now. Everyone w the exception of Adam Long has verbally said they are willing to play ball. Wanted your thoughts on getting all the shares registered under Reg A, the company does not have to be fully reporting to do so, what is [*sic*] your thoughts?" *Id*. at 7-8.

- On October 13, 2017, Wheat asked Kramer the following: "What time can you talk today, I have a conf call w all note holders on Monday to get this deal done. Need your input on finalizing the structure." *Id*. at 8.

---

[3] In the exhibit containing the text messages, the text messages sent by Wheat appear to be sent by the telephone number beginning 619-218-XXXX.

- On October 16, 2017, Wheat advised Kramer as follows: "Been trying to speak w you. Have a plan and agreement being circulated this week. Everyone seems to be on board but requires all lawsuits to be stayed.[ ]Can we speak tomorrow?" *Id*. at 8.

Kramer has also submitted an email sent from Wheat's personal email address to Kramer, dated October 19, 2017, to which Wheat attached his edits to a forbearance agreement concerning Nugene. *See* Kramer Aff., Ex. B [DE 31-6]. Additionally, Kramer has provided text message exchanges between himself and Rosenbaum, in which Rosenbaum tells Kramer, among other things, that he needs to speak with Wheat to resolve the issues of Nugene's defaults. *See id*., Ex. C [DE 31-7]. Lastly, Kramer has submitted an email from Rosenbaum to Wheat, in which Rosenbaum sent Wheat the contact information of investors in Nugene. *See id*., Ex. D [DE 31-8]. According to Kramer, the above evidence places Wheat squarely in the driver's seat of the failing Nugene and supports the assertion that Wheat had authority to represent Nugene in all respects. *See* Kramer Aff. ¶¶ 11-13.

## III.    STANDARD OF REVIEW

"Where . . . the issue of personal jurisdiction 'is decided . . . without discovery, the plaintiff need show only a prima facie case' of jurisdiction on a motion under Rule 12(b)(2)."[4] *Minholz v. Lockheed Martin Corp.*, 227 F. Supp. 3d 249, 255 (N.D.N.Y. 2016) (quoting *Bonkowski v. HP Hood LLC*, 2016 WL 4536868, at *1 (E.D.N.Y. Aug. 30, 2016)). However, significantly, the Court may properly consider extrinsic evidence, such as affidavits and other

---

[4] Plaintiff states that the instant motion was made prior to any discovery being conducted. *See* Pl.'s Opp'n. at 4. Wheat appears to hold the same position. *See* Ind. Def.'s Mem. at 19-20 (discussing prospective discovery into the issue of personal jurisdiction). This Court issued the Case Management and Scheduling Order on March 22, 2018, which set the first deadline for responses to discovery demands at June 15, 2018. *See* DE 19. Judge Feuerstein stayed discovery deadlines at her June 4, 2018 conference with the parties pending the outcome of the instant motion.

supporting material, when analyzing a motion to dismiss under Rule 12(b)(2).  *Power UP Lending Grp., Ltd v. Murphy*, No. 16-CV-1454, 2016 WL 6088332, at *2 (E.D.N.Y. Oct. 18, 2016) (explaining that sworn declarations of fact "are properly considered on a motion to dismiss under Fed. R. Civ. P. 12(b)(2)"); *AEP-PRI Inc. v. Galtronics Corp.*, No. 12 CIV. 8981, 2013 WL 4400833, at *3 (S.D.N.Y. Aug. 13, 2013) (distinguishing a motion under Rule 12(b)(6), which requires the court to limit its consideration to documents incorporated into the complaint by reference, from a motion under Rule 12(b)(2), for which  "the Court may consider extrinsic evidence such as affidavits and other supporting materials"); *Grand River Enters. Six Nations, Ltd. v. Pryor,* 425 F.3d 158, 165 (2d Cir. 2005) ("Where a court [has chosen] not to conduct a full-blown evidentiary hearing on the motion, the plaintiff need make only a prima facie showing of jurisdiction through its own affidavits and supporting materials.").  "In considering a Rule 12(b)(2) motion, the pleadings and affidavits are to be construed in the light most favorable to Plaintiff, and all doubts are to be resolved in Plaintiff's favor."  *Minholz*, 227 F. Supp. 3d at 260 (citing *Bonkowski*, 2016 WL 4536868, at *1).

"The Court employs the same standard of review on a Rule 12(b)(3) dismissal motion alleging improper venue as it does on a Rule 12(b)(2) motion."  *Minholz*, 227 F. Supp. 3d at 260 (citing *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 355 (2d Cir. 2005)).  The plaintiff bears the burden of making a *prima facie* showing that venue is proper, and the Court must view all allegations and evidence in the light most favorable to the plaintiff.  *Gulf Ins. Co.*, 417 F.3d at 355; *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 384 (2d Cir. 2007).  Similar to a Rule 12(b)(2) motion to dismiss, "it is well-settled that '[w]here . . . the parties' designation of a forum for the resolution of disputes is apparent from the face of their agreement, they will be directed to litigate before the specified tribunal.'"  *Am. Med. Distributors, Inc. v. Saturna Grp. Chartered*

*Accountants, LLP*, No. 15-CV-6532, 2016 WL 3920224, at *11 (E.D.N.Y. July 15, 2016)

(quoting *U. S. Bank Nat'l Ass'n*, 582 F. Supp. 2d at 613).

## IV.    DISCUSSION

### A.    Personal Jurisdiction and Rule 12(b)(2)

Generally, a district court reviewing a motion to dismiss for lack of personal jurisdiction

under Federal Rule of Civil Procedure 12(b)(2) must engage in a two-part analysis.  *Brown v.*

*City of New York*, No. 10-CV-5229, 2013 WL 3245214, at *5 (E.D.N.Y. June 26, 2013); *Grand*

*River Enters. Six Nations, Ltd.*, 425 F.3d at 165.  First, it "must determine whether, under the

laws of the forum state (New York in this case), there is jurisdiction over the defendant.  Second,

[it] must determine whether an exercise of jurisdiction under these laws is consistent with federal

due process requirements."  *Grand River Enters. Six Nations, Ltd.*, 425 F.3d at 165 (quoting

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,* 171 F.3d 779, 784 (2d Cir. 1999))

(internal citation omitted).  By contrast, "[w]here an agreement contains a valid and enforceable

forum selection clause, it is not necessary to analyze jurisdiction under New York's long-arm

statute or federal constitutional requirements of due process."  *Am. Med. Distributors, Inc.*, 2016

WL 3920224, at *3 (quoting *U. S. Bank Nat'l Ass'n v. Ables & Hall Builders*, 582 F. Supp. 2d

605, 615 (S.D.N.Y. 2008)); *Koninklijke Philips Elecs. v. Digital Works, Inc.*, 358 F. Supp. 2d

328, 333 (S.D.N.Y. 2005) ("A valid forum selection clause establishes sufficient contacts with

New York for purposes of jurisdiction and venue.").

Although Wheat argues that the lack of personal jurisdiction is based on several grounds

– including the inapplicability of the forum selection clause contained in the Instruments and the

absence of statutory and constitutional bases for jurisdiction – Plaintiff's opposition focuses

solely on the validity of the forum selection clause.  As such, the Court will first address whether

personal jurisdiction over Wheat is proper under the forum selection clause.  If the Court finds

this to be the case, statutory and constitutional jurisdictional analysis becomes unnecessary.

### 1. *Applicable Law*

It is settled law in this Circuit that "a valid forum selection clause may be enforced

against a non-signatory who is so closely-related to the actual signatories or the dispute that

enforcement of the forum selection clause against it is reasonably foreseeable." *Am. Med.*

*Distributors, Inc.*, 2016 WL 3920224, at *4 (collecting cases); *Miller v. Mercuria Energy*

*Trading, Inc.*, 291 F. Supp. 3d 509, 523 (S.D.N.Y. 2018) ("[W]here the alleged conduct of the

nonparties is closely related to the contractual relationship, a range of participants, parties and

nonparties, should benefit from and be subject to forum selection clauses.") (quoting *Magi XXI,*

*Inc. v. Stato della Citta del Vaticano*, 714 F.3d 714, 722 (2d Cir. 2013)).  As one court recently

observed, "[t]he case law makes clear that 'closely related' in this sense is a fairly strict

standard." *Miller*, 291 F. Supp. 3d at 523.  This strict standard has some district courts asking

whether a non-signatory could reasonably foresee that it would be bound to the clause, *see*

*Nanopierce Tech., Inc. v. Southridge Capital Mgmt*., No. 02-0767, 2003 WL 22882137, at *5

(S.D.N.Y. Dec. 4, 2003), and others asking whether the non-signatory's interests are

"'completely derivative' of and 'directly related to, if not predicated upon' the signatory party's

interests or conduct." *Weingrad v. Telepathy*, *Inc*., No. 05-CV-2024, 2005 WL 2990645, at *5

(S.D.N.Y. Nov. 7, 2005) (citation omitted); *Miller*, 291 F. Supp. 3d at 523.

Further, "[i]n some situations, a 'close business relationship' between the signatories and

a non-signatory may satisfy" the "closely related" standard. *Am. Med. Distributors, Inc.*, 2016

WL 3920224, at *4 (citation omitted).  To satisfy the "closely related" standard by alleging a

"close business relationship," the allegations and extrinsic evidence must typically indicate that the parties' business operations were essentially "intertwined." *Id.*

### 2. *Application to the Facts*

The forum selection clause at issue here is contained in identical form in both Notes, at Section 4.6, and both Agreements, at Section 8(a). The clause reads as follows:

> Any action brought by either party against the other concerning the transactions contemplated by this [Note/Agreement] shall be brought only in the state courts of New York or in the federal courts located in the state and county of Nassau. The parties to this [Note/Agreement] hereby irrevocably waive any objections to jurisdiction and venue of any action instituted hereunder and shall not assert any defense based on lack of jurisdiction or venue or based upon *forum non-conveniens*.

Affirmation of counsel for Plaintiff Richard Naidich, Esq., in Opposition to the Motion to Dismiss ("Naidich Aff.") [DE 31], Ex. A [DE 31-1]. Although the clause could perhaps have been worded in a more clear manner, the Court finds that the language reasonably relates the intent of the parties to litigate in either New York State court or federal court "located in the state [of New York] and county of Nassau."[5] Moreover, the clause is valid as to signatories to the agreement under the appropriate standard: (1) it is "mandatory" rather than "permissive"; (2) it appears to cover all claims concerning transactions contemplated by the agreement; and (3) enforcement of the clause would not be unreasonable or unjust.[6] *See Zaltz v. JDATE*, 952 F.

---

[5] Neither courthouse in the Eastern District of New York is located in the County of Nassau – the Brooklyn Courthouse is located in Kings County and the Central Islip Courthouse, where this Court sits, is located in Suffolk County. However, since only the Eastern District of New York can reasonably be implicated in a reference to Nassau County, the Court finds the Eastern District to be the appropriate district under the clause.

[6] Although Wheat mentions these criteria, he does not argue that they are not met as to Plaintiff and Nugene, or as to the text of the actual forum selection clause (as opposed to how the clause is characterized in the Complaint). *See* Ind. Def.'s Mem. at 8-10.

Supp. 2d 439, 450 (E.D.N.Y. 2013) (explaining that in the Second Circuit, a forum selection clause is generally enforceable as against signatories if (1) the clause was reasonably communicated to the parties, (2) the clause is mandatory rather than permissive in nature, (3) the claims involved are subject to the clause, and (4) enforcement would not be unreasonable or unjust) (citing *Phillips*, 494 F.3d at 383); *see also Int'l Biometric Grp., LLC v. Intrepid Sols. & Servs., Inc.*, No. 12 CIV. 4029, 2012 WL 2369501, at *4 (S.D.N.Y. June 21, 2012) ("[F]orum selection clauses are prima facie valid unless they are found to be 'unreasonable.'").  Therefore, the question this Court must address is whether the otherwise valid forum selection clause is binding as to Wheat, a non-signatory.

The Court finds that Plaintiff has satisfied its limited burden at this juncture of showing, both in its allegations and in its evidentiary support, that Wheat was "closely related" to Nugene and the underlying Instruments.  There are several things which lead the Court to draw this conclusion.  First, the Complaint's well-pleaded allegations state that Wheat (1) was aware of and familiar with the terms of the Notes and Agreements between Plaintiff and Nugene, Compl. ¶ 46, (2) caused Nugene to breach the terms of the Instruments by engaging in specific acts, *id.* ¶¶ 51-54, and (3) was in effective control of Nugene and assumed the position of *de facto* President and CEO.  *Id.* ¶ 6.  Although no evidentiary hearing has been held and discovery has been stayed, these allegations satisfy Plaintiff's *prima facie* showing in that they constitute "an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant."  *In re Terrorist Attacks on September 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013).

Likewise, the evidentiary support provided by Plaintiff, which the Court may properly consider, further supports Plaintiff's claim that Wheat was exercising a substantial amount of

control over Nugene during the time period preceding and encompassing Nugene's default on the Notes and breach of the Agreements.  By text message to Kramer, Wheat (1) touted his ownership interest in Nugene, Kramer Aff., Ex. A at 5, (2) stated that he had a plan for Plaintiff to "preserve all of [its] principal," *id*. at 4, (3) was engaged in several meetings with investors and note holders, including a conference call with "all note holders . . . to get [a] deal done," *id*. at 4, 8, (4) was "working on [ ] licensing agreements," *id*. at 7, and (5) was circulating agreements to investors.  *Id*., Ex. B, D.  Additionally, Keith Rosenbuam, counsel for Nugene, on two occasions text-messaged Kramer to ask if he had spoken with Wheat regarding Nugene's default.  *See id*., Ex. C. at 4, 5.  When asked if he was still involved with Nugene, Rosenbaum stated as follows:  "to an extent.  I'm supposed to meet with Robert [Wheat] tomorrow. One of us will call you tomorrow. Sorry this has become difficult."  *Id*., Ex. C at 5.

This evidence, viewed in the light most favorable to Plaintiff, reflects substantial involvement by Wheat in Nugene's operations as they relate to the Plaintiff and other investors. Indeed, it appears that Wheat's decision-making authority was superior to any other Nugene representative, so much so that Nugene's attorney was effectively powerless without him.  At a minimum, this evidence suggests that Wheat had a "close business relationship" with Nugene and that it was foreseeable[7] to Wheat that he would be bound by the forum selection clause in the Instruments with which he was working.  In the Court's view, the nature of the relationship is sufficient to subject Wheat to the forum selection clause of the Instruments.

The Court finds particularly noteworthy Wheat's statement via text message that he "is the largest debt holder and have over 5 times [Plaintiff's] investment at a minimum."  Kramer

---

7    While not dispositive of foreseeability, the Court finds it significant that the risk of and potential for legal action was brought up several times in the text messages exchanged between Kramer and Wheat.  *See generally*, Kramer Aff., Ex. A.

Aff., Ex. A at 5.  This issue deserves greater attention.  In his reply memorandum, Wheat avers that he does not directly own stock in Nugene, but rather that "RBW, Inc. was the debtholder and Wheat is an officer of RBW, Inc."  Ind. Def.'s Reply at 2 n.2.  While the Court's duty to construe the pleadings and evidence in the light most favorable to Plaintiff leads it to discount the conflicting statement made in Wheat's motion papers, even accepting *arguendo* that Wheat was not *directly* invested in Nugene does little to support his motion.

In *Metro–Goldwyn–Mayer Studios v. Canal+ Distribution S.A.S.*, No. 07-CV-2918, 2010 WL 537583 (S.D.N.Y. Feb. 9, 2010), the district court denied a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction under the terms of a forum selection clause.  In that case, non-signatory Groupe Canal owned 65% of non-signatory Canal & France, which in turn owned 100% of the successor-in-interest to the signatory to a contract.  *Id.* at 5.  The court concluded that "[w]hile the precise corporate relationships between the Defendants remain unclear," the vertical nature of the relationship of the defendants rendered them "closely related" to the signatory for purposes of invoking the forum selection clause.  *Id.*; *see Miller*, 291 F. Supp. 3d at 524 (distinguishing the "vertical" relationships in *Metro-Goldwyn-Mayer Studios*, which was sufficient for invoking the forum selection clause, from the "horizontal" relationships between the defendants in the matter before the court).  Under the logic of *Metro-Goldwyn-Mayer Studios*, Wheat's role as either a direct and significant investor in Nugene, or as a fiduciary of such an investor, further supports a finding that Wheat maintained a close business relationship with Nugene sufficient to subject him to the forum selection clause of the Instruments.

The Court is also cognizant that when construing the allegations and evidence in the light most favorable to Plaintiff, Wheat's alleged involvement in Nugene's default on the Notes and breach of the Agreements may have resulted in, and been motivated by, a financial benefit to

19

Wheat and his family.  Curt Kramer attests that in June 2017, Wheat told him by telephone that "he was not going to allow Power Up to convert its debt into stock because he wanted to keep the stock price high and to obtain the stock for himself and his family members."  Kramer Aff. ¶ 5.  Kramer made essentially the same allegation in a text message to Wheat on July 26, 2017, prior to the commencement of this suit.  In response to Wheat's request to "discuss in person" because he was "the largest debt holder" of Nugene and had "over 5 times" Plaintiff's investment, Kramer stated as follows:  "But you orchestrated this to protect yourself and your investors.  Something stinks here."  Kramer Aff., Ex. at 5.

"A third-party beneficiary to a contract is 'by definition' a closely related party to that contract." *Magi XXI, Inc. v. Stato Della Citta Del Vaticano*, 818 F. Supp. 2d 597, 609 (E.D.N.Y. 2011), *aff'd*, 714 F.3d 714 (2d Cir. 2013) (collecting cases).  What's more, "[w]hile . . . third-party beneficiaries to a contract would, by definition, satisfy [the closely related] requirement[ ] . . . , a third-party beneficiary status is not required."  *Direct Mail Prod. Servs. Ltd. v. MBNA Corp.*, No. 99 CIV. 10550, 2000 WL 1277597, at *3 (S.D.N.Y. Sept. 7, 2000) (quoting *Lipcon v. Underwriters at Lloyd's, London*, 148 F.3d 1285, 1299 (11th Cir. 1998)).  This principle makes sense in the context of *intended* beneficiaries:  the interests of a non-signatory to an agreement – who is also an intended beneficiary under that agreement – are almost by definition "completely derivative" of and "directly related to, if not predicated upon" the signatory parties' interests or conduct so as to be "closely related."  *Weingrad*, 2005 WL 2990645, at *5 (S.D.N.Y. Nov. 7, 2005).  However, the Court finds that the interests of fairness are best served here by applying this logic to Wheat, an *unintended* beneficiary, who allegedly came into his benefit by causing a signatory to breach the relevant agreements to the detriment of the other signatory.  Accordingly, the well-pleaded allegations that Wheat caused Nugene to default on the Notes and breach the

20

Agreements to obtain a financial benefit, *see* Compl. ¶¶ 50-54, when combined with the evidence examined above, further supports a finding that Wheat should, at this juncture, be bound by the forum selection clause.

From the foregoing analysis the Court finds that Plaintiff has met its *prima facia* burden of alleging that Wheat was "closely related" to both Nugene as well as the Instruments executed by Nugene and Plaintiff.  Plaintiff has moreover supported its allegations with sufficient documentation.  The allegations and evidence taken together establish that (1) Wheat and Nugene had a sufficiently "close business relationship" to satisfy the "closely related" standard, and (2) it was or should have been foreseeable to Wheat that he would be bound by the forum selection clause in the Instruments with which he was dealing.  As a result, personal jurisdiction over Wheat is properly exercised by this Court.  On that basis, this Court respectfully recommends to Judge Feuerstein that Wheat's motion to dismiss pursuant to Rule 12(b)(2) be DENIED.

### B.    Venue and Rule 12(b)(3)

The Court employs the same standard of review in evaluating Wheat's motion to dismiss under Rule 12(b)(3) as it utilized in evaluating his Rule 12(b)(2) motion.  *Minholz*, 227 F. Supp. 3d at 260.  Importantly, "forum selection clauses are *prima facie* valid and should control questions of venue absent a 'strong showing' that enforcement would be 'unreasonable and unjust.'"  *Zaltz*, 952 F. Supp. 2d at 450 (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 12 (1972)); *see, e.g., Take-Two Interactive Software, Inc. v. Zipperer*, No. 18 CIV. 2608, 2018 WL 4347796, at *4 (S.D.N.Y. Aug. 16, 2018) (explaining that "a forum selection clause that is in clear and unambiguous language . . . is enforceable even if it is in fine print").

Because the Plaintiff has adequately shown at this juncture that Wheat is subject to the forum selection clause in the Notes and Agreements, and because that clause is otherwise valid, the Court finds that Plaintiff has met its burden of showing that venue is proper. *Koninklijke Philips Elecs.*, 358 F. Supp. 2d at 333 ("A valid forum selection clause establishes sufficient contacts with New York for purposes of jurisdiction and venue."); *Am. Med. Distributors, Inc.*, 2016 WL 3920224, at *11 ("[I]t is well-settled that '[w]here . . . the parties' designation of a forum for the resolution of disputes is apparent from the face of their agreement, they will be directed to litigate before the specified tribunal.'") (quoting *U. S. Bank Nat'l Ass'n*, 582 F. Supp. 2d at 613).

In light of Plaintiff's showing and the absence of extraordinary circumstances, the Court respectfully recommends to Judge Feuerstein that Wheat's motion to dismiss, pursuant to Rule 12(b)(3), be DENIED. For the same reasons, the Court further recommends to Judge Feuerstein that Plaintiff's motion to transfer this case to the Southern District of California, pursuant to 28 U.S.C. § 1404(a), be DENIED.

## V.    CONCLUSION

For the foregoing reasons, the Court respectfully recommends to Judge Feuerstein that Wheat's motion to dismiss pursuant to both Rule 12(b)(2) and Rule 12(b)(3) be DENIED.

## VI.    OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. *See* FED. R. CIV. P. 6(a), (e). Such objections by an attorney of record shall be filed with the Clerk of the Court via ECF. **A courtesy copy of any objections filed is to be sent to the Chambers of the Honorable Sandra J. Feuerstein, and to the Chambers of the**

**undersigned.  Any requests for an extension of time for filing objections must be directed to Judge Bianco prior to the expiration of the fourteen (14) day period for filing objections**.

Failure to file objections will result in a waiver of those objections for purposes of appeal.

*Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Beverly v. Walker*, 118 F.3d 900, 901 (2d Cir. 1997), *cert. denied*, 522 U.S. 883 (1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

                                    **SO ORDERED.**

Dated: Central Islip, New York
       January 10, 2019

                                    /s/ A. Kathleen Tomlinson
                                    A. KATHLEEN TOMLINSON
                                    U.S. Magistrate Judge